# United States District Court
# Western District of New York

---

G. JAMES PIAZZA,

Plaintiff,

-vs-

CORNING INCORPORATED AND THE
CORNING INCORPORATED BENEFITS
COMMITTEE,

DECISION AND ORDER
02-CV-6412-CJS(F)

Defendants.

---

## APPEARANCES

For plaintiff:

William J. Leberman, Esq.
One Lincoln Center
110 W. Fayette Street, Suite 1110
Syracuse, NY 13202
(315) 478-1334
Fax: 315-424-1011
Email: wleberman@lebermanlaw.com

For defendants

Michael R. Wolford, Esq.
Laurie A. Giordano, Esq.
Wolford & Leclair LLP
600 Reynolds Arcade Building
16 East Main Street
Rochester, NY 14614
(585) 325-8007
Fax: 585-325-8009
Email: mwolford@wolfordleclair.com
Email: lgiordano@wolfordleclair.com

## INTRODUCTION

This case involves the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*. Before the Court are defendants' motion for summary judgment seeking dismissal of the case, and plaintiff's cross-motion to amend the complaint. For the reasons stated below, plaintiff's motion is denied and defendants' motion is granted.

## FACTUAL BACKGROUND

Plaintiff filed an amended complaint in this Court on August 27, 2003, alleging a violation of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq*, pursuant to 29 U.S.C. § 1132(e) (the civil enforcement provisions of ERISA). Plaintiff contends that defendant the Corning Incorporated Benefits Committee ("Benefits Committee"), acting as administrator for the Corning Incorporated Investment Plan ("Plan"), violated its fiduciary duties under ERISA when it delayed distribution of his Corning common stock, held in his individual Plan account. Plaintiff claims that the distribution was delayed for 52 days following his last day of work on January 15, 2000, and that this delay caused him to lose over $350,000, since the market value of Corning stock was rapidly decreasing during that time.

Defendants, in their summary judgment application[1], argue that, based on Supreme Court authority, ERISA does not authorize a lawsuit for private damages, such as plaintiff's. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985). Plaintiff has

---

[1]In addition to defendants' arguments for judgment for defendant Benefits Committee, defendant Corning Incorporated correctly points out, in its Reply Memorandum of Law (Docket # 47), that since it is not the Plan Administrator, and no claim is made out against it as the settlor of the Plan, all claims against it should be dismissed. *See Crowley v. Corning, Inc.*, 234 F. Supp. 2d 222 (W.D.N.Y. 2002).

responded by denying that his claim for money damages is not authorized by ERISA and by cross-moving to amend his complaint to add a request for what he characterizes as equitable relief. (See Leberman Aff. (Apr. 21, 2005)[2] ¶¶ 23-25.)

## STANDARDS OF LAW

### *Summary Judgment*

The standard for granting summary judgment is well established. Summary judgment may not be granted unless "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). A party seeking summary judgment bears the burden of establishing that no genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).   "[T]he movant must make a *prima facie* showing that the standard for obtaining summary judgment has been satisfied." 11 MOORE'S FEDERAL PRACTICE, § 56.11[1][a] (Matthew Bender 3d ed.). That is, the burden is on the moving party to demonstrate that the evidence creates no genuine issue of material fact. *See Amaker v. Foley,* 274 F.3d 677 (2d Cir. 2001); *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893 (3d Cir.1987) (*en banc*). Where the non-moving party will bear the burden of proof at trial, the party moving for summary judgment may meet its burden by showing the evidentiary materials of record, if reduced to admissible evidence, would be insufficient to carry the non-movant's burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

---

[2]Attached to plaintiff's Notice of Cross-Motion for Leave to Amend Complaint (Docket # 43).

Once that burden has been met, the burden then shifts to the non–moving party to demonstrate that, as to a material fact, a genuine issue exists. FED. R. CIV. P. 56(e); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). A fact is "material" only if the fact has some affect on the outcome of the suit. *Catanzaro v. Weiden*, 140 F.3d 91, 93 (2d Cir. 1998). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. In determining whether a genuine issue exists as to a material fact, the court must view underlying facts contained in affidavits, attached exhibits, and depositions in the light most favorable to the non-moving party. *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). Moreover, the court must draw all reasonable inferences and resolve all ambiguities in favor of the non-moving party. *Leon v. Murphy*, 988 F.2d 303, 308 (2d Cir.1993); *Anderson*, 477 U.S. at 248-49; *Doe v. Dep't of Pub. Safety ex rel. Lee*, 271 F.3d 38, 47 (2d Cir. 2001), *rev'd on other grounds Connecticut Dept. of Public Safety v. Doe*, 538 U.S. 1, 123 S.Ct. 1160 (2003); *International Raw Materials, Ltd. v. Stauffer Chemical Co.*, 898 F.2d 946 (3d Cir. 1990). However, a summary judgment motion will not be defeated on the basis of conjecture or surmise or merely upon a "metaphysical doubt" concerning the facts. *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir. 1991) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Knight v. United States Fire Ins. Co.*, 804 F.2d 9 (2d Cir. 1986). Rather, evidentiary proof in admissible form is required. FED. R. CIV. P. 56(e). Furthermore, the party opposing summary judgment "may not create an issue of fact by submitting an affidavit in opposition to a summary judgment motion that, by omission or addition, contradicts the affiant's previous deposition testimony." *Hayes v. New York City, Department of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996).

**Motion to Amend**

The Federal Rules of Civil Procedure provide that leave to file an amended complaint "shall be freely given when justice so requires."  Fed. R. Civ. P. 15(a).  However, leave to amend may be denied in the face of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment . . . ."  *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also United States v. Continental Illinois Nat. Bank And Trust Co.*, 889 F.2d 1248, 1254 (2d Cir. 1989).

## DISCUSSION

First, ERISA Section 409(a), 29 U.S.C. § 1109(a), does not authorize a private action for money damages. As the Supreme Court wrote in *Massachusetts Mut. Life Ins. Co.*, 473 U.S. at 146, "the relevant text of ERISA, the structure of the entire statute, and its legislative history all support the conclusion that in § 409(a) Congress did not provide, and did not intend the judiciary to imply, a cause of action for extra-contractual damages caused by improper or untimely processing of benefit claims."

Turning next to plaintiff's cross-motion seeking to amend his complaint to add a request for equitable relief and restitution, the Court notes at the outset that such application was brought  well after expiration of the amended scheduling order date of January 24, 2003. In his cross-motion, plaintiff proposes[3] to add a claim under ERISA Section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which states in relevant part:

 (a) Persons empowered to bring a civil action

---

[3]No proposed second amended complaint was included with the motion papers.

A civil action may be brought--

(1) by a participant or beneficiary– …

(B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan….

29 U.S.C. § 1132(a)(1)(B). Though *Massachusetts Mut. Life Ins. Co.* clearly would not permit a claim for interest on the delay in distribution of his Corning stock, plaintiff is seeking restitution for what he characterizes as equitable relief for the diminution in value of his Corning stock, during the time between his departure from employment on September 15, 2000 and the date of stock distribution, November 6, 2000. Defendants assert there is no legal basis for an award of extra contractual damages, citing to *Massachusetts Mut. Life Ins. Co.* (Def.s' Mem. in Support at 19; Def.s' Reply Mem. at 5.) The Court determines that even if it were to allow such an amendment, the claim would be futile.

Defendants have submitted proof, and plaintiff has not contradicted it, that on October 11, 2000, plaintiff's broker, Michael Mustico ("Mustico"), asked the Benefits Committee, through the Corning Benefits Network ("CBN"), to distribute plaintiff's shares of stock "in kind." (Ex. N, at 100[4].) In a follow-up telephone call on October 16, 2000, Mustico again stated to a CBN employee that he wanted the stock "in kind." (Ex. N, at 104.) In a separate recorded telephone call to the CBN on October 16, plaintiff asked a question about his insurance coverage and learned that his termination date, because of accrued

---

[4]Page number references for Exhibits N and O refer to bates numbers.

vacation time, was actually October 6, 2000[5] and not September 15, 2000. (Ex. N., at 108.)

Evidently plaintiff did not inform Mustico of this fact.  Rather on October 23, 2000,  Mustico

learned from a CBN employee that plaintiff's termination date was October 3, 2000[6], and

that he had to wait until thirty days after his termination date "to do anything." (Ex. N., at

114.) Further, that CBN employee indicated to Mustico that plaintiff's investment in the

Corning Common Stock Fund could not be transferred until November 6, 2000, because

plaintiff was under age 55. (*Id*.)  Mustico confirmed in the call on October 23 that plaintiff

wanted his stock "in kind" and the CBN employee informed both that the stock shares

would be sent to plaintiff about six weeks *after* November 6, 2000.  However, in response

to a further inquiry from Mustico, the CBN employee stated that plaintiff could elect, before

4:00 p.m. on November 6, to received his shares half "in kind" and half in cash, or any

other percentage, but that the sale of stock would not take place until November 6. (*Id*.) On

the distribution date of November 6, 2000, plaintiff's Corning Common Stock Fund

distribution amounted to $884,775. (Ex. O, at 175.)

On October 19, 2001, plaintiff through his counsel made a claim to the Benefits

Committee challenging its interpretation of "termination date," which he stated was not

defined in the Corning Benefits Handbook. (Ex. U, at 1-2.) Plaintiff claimed that, "The Plan

Administrator and Trustee did not comply with the terms of the Plan by failing to process

Mr. Piazza's request for distribution effective as of the date of his termination on

September 15, 2000, or at the latest, October 15, 2000." (Ex. U, at 3-4.) The Benefits

---

[5]The transcript of the telephone call on October 16, 2000 indicates a termination date of October 6, 2000 while the transcript of the telephone call on October 23, 2000 indicates a termination date of October 3, 2000.

[6]See footnote number 5.

Committee denied his claim in a detailed letter dated December 18, 2001 (Ex. V.) On February 15, 2002, plaintiff appealed the Benefits Committee's decision, and on April 10, 2002, the Benefits Committee denied the appeal. (Exs. W & X.)

The Plan document gives the Benefits Committee sole discretion in interpreting Plan provisions and distributing benefits. (Plan Section 7.3, Ex. F.) ERISA restricts a court's ability to review the decisions of a plan administrator where the plan gives the administrator discretionary authority to construe and interpret the terms of the plan. In such a situation, a court is limited to the "arbitrary and capricious" standard of review. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101 (1989). In this regard, since the plan undoubtedly grants the Retirement Committee discretionary authority to determine eligibility, the Court must review the Retirement Committee's determination to deny benefits using the deferential arbitrary and capricious standard of review. *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 441 (2d Cir. 1995) ("[W]here the written plan documents confer upon a plan administrator the discretionary authority to determine eligibility, we will not disturb the administrator's ultimate conclusion unless it is 'arbitrary and capricious.'") (*quoting Firestone*, 489 U.S. at 115). Under this standard, a court "may overturn a decision to deny benefits only if it was without reason, unsupported by substantial evidence or erroneous as a matter of law." *Id*. at 442 (citations and internal quotation marks omitted). "[A] district court's review under the arbitrary and capricious standard is limited to the administrative record." *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).

The Plan here states that a participant who terminates employment before he is entitled to receive a distribution because of retirement, disability, or death, is entitled to receive the entire amount credited to his tax-deferred contribution account, voluntary

contribution account, employer mandatory contribution account and roll over account plus any amount in his vested employer matching contribution account. It further states, "for purposes of this section 5.3, 'termination of employment' means a severance from service with all Affiliated Companies for any reason, whether voluntary or involuntary...." (Plan Section 5.3, Ex. F.) The Plans Article V also contains a detailed discussion of the payment of benefits. It directs the Committee to pay benefits as the participant directs and in accordance with the terms of that section and rules adopted by the Committee. (Plan Section 5.6, Ex. F.) That section also states, "[t]he value of benefit payment shall be determined as of the distribution processing date fixed by the Committee following the event that triggers entitlement to benefits (termination of employment, etc.). The Committee shall direct the Trustee to make actual distribution as soon as administratively practicable following the distribution processing date." (Plan Section 5.6(a), Ex. F.)

As the Benefits Committee explained in its initial letter denying the claim, "[t]ermination of employment is important only because it is a triggering event, the same as retirement, death or disability are triggering events that entitle a participant to receive benefits." (Ex. V, at 2.) Also revealing is the telephone conversation between Mustico and CBN on October 23, 2000 in which the CBN employee stated, "[w]e are only going by the information was sent to us from Human Resources and they listed his last day as the 3rd of October." (Exhibit N, at 115.)

The Benefits Committee also relied on page 190 of the employee handbook containing the summary plan description. That page states that the CBN "cannot process final distribution requests until 30 days after your termination or retirement date." In the supplemental appendix of exhibits, defendants have provided the Court with what is

entitled, "Your Benefits at Retirement, a Summary of Corning Advantages Plans in Retirement." (Exhibit Y.) That document, at p. 225, states "[a]fter you retire, you may call the Corning Benefits Network to request a distribution of your Investment Plan account. The Corning Benefits Network will process your request as early as 30 days after you retire, provided your termination from the Corning payroll system is processed on time." The Court finds that based on the above, the Benefits Committee's detailed decision on plaintiffs claim is neither arbitrary, nor capricious, and under the standard of review applicable in this case, the Benefits Committee's decision was reasoned, supported by substantial evidence and not erroneous as a matter of law.

In view of the Court's determination, granting plaintiff's cross-motion to amend the complaint to add an extra contractual damages claim masquerading an equitable claim would be futile. Therefore, the Court may, and does, deny plaintiff's cross-motion to amend, notwithstanding the normally liberal interpretation of Federal Rule of Civil Procedure 15. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (recognizing futility of amendment as a valid ground for denying a motion to amend the complaint). Further, in this particular case, plaintiff has not articulated the "good cause" necessary to grant an extension to the scheduling order. Therefore, plaintiff's cross-motion to amend must be, and hereby is, denied.

**CONCLUSION**

Accordingly, plaintiff's cross-motion to amend the complaint (# 43) is denied and

defendants' motion for summary judgment (# 34) is granted. The case is dismissed.

IT IS SO ORDERED.

Dated: November 18, 2005
      Rochester, NY

                       ENTER.

                       /s/ Charles J. Siragusa
                       CHARLES J. SIRAGUSA
                       United States District Judge